UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| SHOUA LEE,<br><br>       Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL,<br><br>       Defendant. | Case No. 17-cv-04858-RMI<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 27 |

     Plaintiff Shoua Lee seeks judicial review of an Administrative Law Judge ("ALJ") decision denying her application for benefits under Title XVI the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. (Administrative Record ("AR") 1-7). The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 5, 10) and both parties have moved for summary judgment (dkts. 20, 27). For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

## LEGAL STANDARDS

     The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

Plaintiff filed an application for Title XVI disability benefits on November 20, 2013, alleging an onset of disability date of November 10, 2007. (AR 167-176). Plaintiff's application was denied initially on April 11, 2014. (AR 85). Plaintiff filed a request for hearing with an ALJ and a hearing was held on October 27, 2015. (AR 38-73). The ALJ issued an unfavorable decision on March 11, 2016. (AR 17-37). Plaintiff requested review by the Appeals Council on May 1, 2016. (AR 164-65). The request for review was denied on June 22, 2017. (AR 1-7).

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step evaluation process. (AR 17-37).

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date she became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the

2

claimant will be found not disabled. *See id*.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 5, 2013, her alleged onset date. (AR 22).

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: post-traumatic stress disorder, depressive disorder, back pain, and lupus. (AR 22).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 22).

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") and then determine whether the claimant has the RFC to perform the requirements of her past relevant work. *See id*. §§ 416.920(e) and 416.945. The ALJ found Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) except that Plaintiff must avoid all work at heights or with heavy hazardous machinery as safety precautions.  Plaintiff must also avoid climbing ladders, ropes, and scaffolds and must avoid work that involves the general public. She is limited to simple, repetitive, unskilled tasks.  (AR 24).

At Step Five, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. *See* 20 CFR § 416.920(g). If the claimant is able to do other work, she is not disabled. The ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including laundry worker, dining room attendant, hand packager, dishwasher, garment presser, and

production helper/bakery. (AR 31). Thus, the ALJ found Plaintiff was not disabled since November 5, 2013, the date the application was filed. (AR 31).

## HEALTH CARE PROVIDERS

Dustin Jacot, PA-C, is Plaintiff's primary treating health care provider. Plaintiff was seen by treating counselor Janet Schwertscharf, LCSW, on October 3, 2013. Plaintiff filed her application for benefits on November 5, 2013, and on November 19, 2013, Plaintiff was evaluated by psychologist Annamaria Anthony, Ph.D., with Del Norte Community Health. (AR 347). On May 29, 2014, a State agency doctor examined Plaintiff. (AR 96). Plaintiff was seen by consultative examiner Roger Wagner, M.D., on March 20, 2014. (AR 27, 392). Plaintiff had her hearing before the ALJ on October 27, 2015. (AR 38). On December 5, 2015, State agency consultative examiner Kimel Limon, Psy.D., examined Plaintiff. (AR 459).

## DISCUSSION

### Plaintiff's Symptom Testimony

Plaintiff contends that the ALJ committed harmful legal error by rejecting her symptom testimony. She cites *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015), in which the Ninth Circuit held that "[t]o ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." An ALJ must make findings regarding the claimant's subjective allegations that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p. A reviewing court will grant deference to an ALJ's determination as to Plaintiff's subjective testimony where it is supported by "specific findings justifying that decision." *See Flaten v. Sec. of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (citations omitted). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), quoting *Thomas v. Barnhart*, 278 F.3d 948, 959 (9th Cir. 2005).

In determining that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ cited Plaintiff's "very inconsistent reports of symptoms; her lack of follow-up referrals for diagnostic imaging; her receipt of very routine and conservative treatment; and the lack of supportive and objective clinical findings." (AR 29). Further, the ALJ cited multiple inconsistencies in the record to support his finding that Plaintiff had exaggerated her symptoms. The ALJ found:

> [T]he claimant did not report auditory and visual hallucinations to Dr. Wagner, the CDI investigators, or any of her providers and the CDI investigators and providers did not note findings consistent with such hallucinations or that approach the findings of Dr. Limon. The claimant drives, which the undersigned wonders how she could do with all the visual and auditory hallucinations she reports she suffers to Dr. Limon. Providers describe the claimant has [sic] healthy appearing, calm, and cooperative. (Exhibit 3F). The evidence tends to show that the claimant was exaggerating to Dr. Limon in order to help influence her disability claim.

(AR 28).

> The record, including the CDI investigation, is consistent with malingering and exaggeration. The claimant alleged extreme mental limitations from a post-war condition, such that she has no memory of basic facts and information, yet the providers who examined her prior to her filing for SSI, did not note corroborative findings. The claimant instead reported chiefly spousal relationship issues. The undersigned used a Hmong interpreter at the hearing although she arrived in the United States decades prior, was naturalized in 2012, and there is evidence that she took 6 months of ESL after she came to the United States. She has a California Driver's license and reported in some records that she drives, although at the hearing she reported that she stopped driving 1.5 years prior. The claimant was unable to answer basic questions and often made bizarre statements yet she is capable of looking after 3-4 children, to drive, and to be a payee for her benefits. Providers who examined the claimant prior to the filing of her SSI application did not note findings that would in any way come close to substantiating the claimant's behavior and her reports of auditory and visual hallucinations. SS agency personnel noted that her behavior suggested that she had been coached to present with symptoms and the CDI investigation seemed to corroborate that. The claimant alleges that she is "sick" but there are no substantive treatment visits other than monthly clinic visits for prescriptions that she does not really take, forgets, or doesn't know whether she has taken. An X-ray/CT of the claimant's hips revealed only mild, unremarkable findings with some osteophytes and possible arthritis but providers including the consultative examiners noted normal ambulation (Exhibit 16F). The claimant did not receive physical therapy, acupuncture, chiropractic, or any other type of treatment, nor was she worked up or referred to a specialist that would indicate a greater level of concern from her doctor's perspective. Overall, I find the claimant less than fully credible given the dramatic and disproportionate level of complaints with relatively minimal, if any treatment. She also gave inconsistent responses and often did not know answers to basic questions or changed her answers when

pressed to explain. A Hmong interpreter was used throughout the hearing so any language barrier was not at issue.

(AR 29).

In this portion of her decision, the ALJ identified specific examples of Plaintiff's malingering and exaggeration, as well as inconsistent statements made by Plaintiff regarding her symptoms. The ALJ found, "[t]he claimant has provided very limited treatment evidence for the period at or near her application date to demonstrate her allegations of severe physical and psychological symptoms." (AR 25). Further, the ALJ found that Plaintiff's primary care provider recommended that she engage in regular exercise, and because Plaintiff enjoys the outdoors, a provider recommended that she pick wild berries and apples. (AR 26). The ALJ "doubt[ed] that a provider would recommend outdoor activities and exercise to an individual suffering from severe back pain and other symptoms." (AR 26). Given that Plaintiff may not establish disability through mere complaints of symptoms, the lack of physician-imposed limitations, as well as the physicians' suggestions that contradict Plaintiff's alleged symptoms, are central to an analysis of a claimant's subjective statements. *See* 20 C.F.R. § 416.929(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

Furthermore, the ALJ noted that there were a number of instances in which Plaintiff was not compliant with treatment suggestions or failed to pursue recommended diagnostics, which undermined the alleged severity of her symptoms. (AR 26). *See* 20 C.F.R. § 416.930(b) ("if you do not follow the prescribed treatment without a good reason, we will not find you disabled"); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (where evidence showed that the claimant "failed to [seek treatment] until after she applied for disability benefits," "it was reasonable for the ALJ to conclude that the 'level or frequency of treatment [was] inconsistent with the level of complaints'"), quoting SSR 96-7p. For example, the ALJ noted that despite allegations of back pain, there is no evidence that Plaintiff followed-up on the referrals for spinal x-rays. (AR 25-26). Similarly, after an x-ray of her hip revealed the possibility of a non-displaced fracture, she did not follow-up with diagnostic studies to confirm whether there was a fracture. (AR 27). Plaintiff also reported wrist pain and numbness, but did not seek any regular treatment for these symptoms. (AR

6

27).

Finally, the ALJ described inconsistencies between the medical evidence and the degree of symptoms Plaintiff alleged. Inconsistency with the medical evidence is an appropriate basis to question a claimant's subjective statements. *See* 20 C.F.R.§§ 416.929(c)(2) ("Objective evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques"), (c)(4) (ALJ will consider "inconsistences in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including . . . the signs and laboratory findings, and statements by your medical sources"; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) ("conflict between [claimant's] testimony of subjective complaints and the objective medical evidence in the record" provided "specific and substantial" reasons that undermined a claimant's credibility).

The ALJ noted the lack of clinical findings to support Plaintiff's allegations. (AR 27, 29). For example, an x-ray and CT scan of Plaintiff's hips revealed mild findings, namely some osteophytes and possible arthritis, and Plaintiff exhibited normal gait and ambulation. (AR 27). Dr. Wagner observed that Plaintiff was able to get up out of her chair and get on and off the examination table easily, she walked in a normal speed to the examination room, she sat comfortably without the need to move around, and she had no problems bending over at the waist, taking off her shoes, and putting them back on. (AR 27). She displayed good dexterity with the hands, although she seemed to favor the right hand. (*Id.*) The ALJ explained that Dr. Wagner noted a normal physical examination except for some 4/5 hand grip strength bilaterally with questionable effort and somewhat positive straight leg raises on the right. (*Id.*) Dr. Wagner found normal motor strength, normal sensation, normal reflexes, and normal neurological findings. The ALJ stated that Dr. Wagner found "subjective abdominal pain, hand numbness, and thoracolumbar pain, with the diagnosis limited due to lack of imaging studies." (*Id.*)

With respect to Plaintiff's mental health symptoms, the ALJ pointed out that the providers who examined Plaintiff prior to her application date did not note findings that would

substantiate Plaintiff's later behavior and reports of hallucinations. (AR 29). Plaintiff objects, asserting that "the ALJ omitted evidence that support a longitudinal history of Plaintiff's mental health symptoms," yet she then cites only treatment notes that post-date her application, providing an incorrect date for one of the records. *See* (dkt. 20) at 16:16-17.[1] Although it is a fine line, the providers did not, as she asserts, find that she had suicidal thoughts nor did they observe that she had hallucinations; rather, they merely recorded Plaintiff's own subjective allegations. (AR 347, 409-11).

Ultimately, the ALJ appropriately accounted for those symptom statements that were consistent with the record, Plaintiff's admitted daily activities, "her credible reports of some depression due to relationship issues treated with therapy and medication," and "her limited education and language abilities," by restricting her to simple, routine, unskilled tasks with no public contact. (AR 24, 29). Thus, the assigned mental RFC fully incorporated the evidence and the statements that the ALJ reasonably found to be consistent with the record. Although Plaintiff may disagree with the ALJ's conclusion, an ALJ's "rational" interpretation of the evidence must be upheld "where the evidence is susceptible to more than one rational interpretation," even though the evidence "may also admit of an interpretation more favorable to [the claimant]." *Burch*, 400 F.3d at 680-81; *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

The court concludes that the ALJ specified which testimony she found not credible, and provided clear and convincing reasons, supported by evidence in the record, to support that credibility determination. *See Brown-Hunter v. Colvin*, 806 F.3d at 488-89. The court finds no basis to reverse the ALJ's decision on this issue.

**<u>Opinion of Kimel Limon, Psy. D.</u>**

Plaintiff contends that the ALJ committed harmful legal error by rejecting the opinion of

---

[1] Plaintiff incorrectly states that the record from Janet Schwertscharf, LCSW, "preceded the application" date; that record is from October 3, 2014, not 2013, as Plaintiff alleges. *See (*dkt. 20) at 16:22, citing AR 409-10.

Kimel Limon, Psy.D., the agency's consultative psychological examiner, arguing that the ALJ's rationale for rejecting Dr. Limon's assessment of Plaintiff's work capabilities does not withstand scrutiny. In his Medical Source Statement, Dr. Limon rated "extreme" limitations in all work-related areas of functioning. (AR 472-73). Plaintiff stresses that Dr. Limon's assessment "stands alone as substantial medical source opinion evidence regarding Plaintiff's mental residual functional capacity." (AR 20, 10: 9-10). Dr. Limon opined that Plaintiff was "delusional, anxious, and had a constricted affect." (AR 462). Dr. Limon stated in regard to Plaintiff that, "claimant had difficulty interacting due to auditory and visual hallucinations affecting her ability to interact appropriately" and her "mental disorder severely impacts her ability to function in all domains, including socially, occupationally, academically and in her executive functions." (AR 473).

The agency's regulations provide, "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(c)(1). If an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject the examining doctor's opinion only by providing specific and legitimate reasons that are supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

The ALJ summarized her evaluation of Dr. Limon's opinion as follows:

> The undersigned gives limited weight to the opinion of consultant, Dr. Limon. Dr. Limon opined that the claimant is severely impaired in all work related activities. (Exhibit 13F). The claimant appeared to exaggerate her symptoms to Dr. Limon, and Dr. Limon did not have records of provider visits or the CDI interview, which would have likely provided substantive information and accounted for some of the wide array of dramatic testimony given by the claimant to Dr. Limon. The claimant's reports to Dr. Limon are highly inconsistent with reports to her own providers. Based on the single consultation, Dr. Limon had less than a full picture and foundation to evaluate the claimant; he appeared to uncritically accept the claimant's subjective dramatic complaints. Moreover, Dr. Limon's opinion is not based on longitudinal treatment and a review of the substantial records fail to support his extreme conclusions.

(AR 30).

Plaintiff argues that there is no evidence that Plaintiff was attempting to mislead Dr. Limon

or to exaggerate her symptoms. The court rejects this argument. As the ALJ explained, Dr. Limon had only Plaintiff's own subjective testimony on which to base his opinion because, as a consultative examiner, he had only one visit with her; therefore he was not aware that Plaintiff had never before reported the type of hallucinations and symptoms she reported to him. (AR 30). An ALJ may discount a physician's opinion where it is based on a claimant's properly rejected subjective statements. *See Tonapetyan, v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (the ALJ appropriately discounted an examining physician's opinion where it was based on the claimant's properly rejected subjective statements and testing that was within the claimant's control). As discussed above, the ALJ properly rejected Plaintiff's symptom testimony. Plaintiff did not report the extreme hallucinations she relayed to Dr. Limon to any other provider. She did not relay any need to light candles, and there is no indication that she brought candles and a plate to other doctor's appointment, despite Plaintiff's statement during the examination that she "always carr[ies] the candle and plate with" her. (AR 30; *see* AR 459-61).

The ALJ also noted discrepancies between Plaintiff's behavior during Dr. Limon's examination and her behavior during her visits with the CDI investigators and other providers (AR 28). An ALJ may give reduced weight to an opinion that is inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Throughout the record, providers, particularly her primary care provider, consistently described Plaintiff as calm, cooperative, alert, oriented, and healthy appearing. (AR 28, 319, 339, 397-99, 402, 404, 412, 416, 427, 430-31, 452-53). Dr. Wagner described Plaintiff as pleasant and wrote that she provided an adequate history. (AR 23, 393). The CDI investigator noted that Plaintiff was alert, cooperative, aware of her surroundings, answered questions appropriately, recalled dates and events, was able to provide person medical information, and had a neat and clean appearance. (AR 23, 360-61). There is no other indication in the record that Plaintiff was "delusional," as Dr. Limon stated. (AR 462). As

the ALJ noted, the records from medical appointments and the CDI interview "would have likely provided substantive information and accounted for some of the wide array of dramatic testimony" Plaintiff gave to Dr. Limon. (AR 30). *See* 20 C.F.R. § 416.927(c)(6) ("the extent to which a medical source is familiar with the other information in your case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion").

Finally, the ALJ pointed out that given Dr. Limon had only one visit with Plaintiff, he did not have a full picture or longitudinal sense of her condition. (AR 30). *See* 20 C.F.R. § 416.927(c)(2)(i)-(ii) (frequency of treatment and the length, nature and extent of the treatment relationship are relevant when weighing physicians' opinions); *see, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (the ALJ may discount the opinion of a physician who has not seen the patient long enough to develop a "longitudinal picture"). This factor is important in a case like this one, where the record reveals significant inconsistencies and the presentation of extreme symptoms only during the one-time examination. Notably, no treating physician opined that Plaintiff had limitations consistent with an inability to work; even though the ALJ explicitly stated he would leave the record open for Plaintiff to obtain medical source statements from her providers, Plaintiff failed to provide any such evidence or request an extension in order to do so. (AR 29, 72-73, 458).

The court has considered all of Plaintiff's arguments and based on the above, finds that the ALJ gave specific and legitimate reasons for rejecting Dr. Limon's opinion which are supported by substantial evidence. *See Garrison*, 759 F.3d at 1012-13. According, the court finds no error.

## **New Evidence**

Following the hearing before the ALJ on October 27, 2015, Plaintiff submitted additional evidence to the Appeals Council. The Appeals Council described this additional submission as follows:

You submitted seven pages from Kings View Telepsychiatry dated February 19,

2015; 70 pages from Del Norte County Mental Health dated August 29, 2014 through February 5, 2016; two pages from Sutter Coast Hospital dated August 25, 2015 through September 25, 2015; and 16 pages from Open Door Community Health Centers dated September 16, 2015 through January 28, 2016. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

You submitted three pages from TeleMed2U dated April 26, 2016 and 18 pages from Open Door Community Health Centers dated March 23, 2016 through June 15, 2016. The Administrative Law Judge decided your case through March 11, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 11, 2016.

(AR 2).

Plaintiff cites four particular items of evidence included in this additional submission: (1) evidence dated January 28, 2016, concerning the possible diagnosis of lupus erythematosus (AR 595; dkt. 20-1, at 16); (2) evidence of an April 26, 2016 treatment visit with a rheumatologist, who diagnosed Plaintiff with an underlying autoimmune process (AR 606-608; dkt. 20-3, at 3-5; (3) evidence of testing performed in May 2016 which Plaintiff claims revealed Plaintiff has Epstein Barr disease (AR 499-500; dkt. 20-2, at 9-10); and (4) evidence of additional findings from May 2016 that were positive for Parvovirus (AR 504; dkt. 20-2, at 14).[2] Plaintiff claims that these test results and additional diagnoses provide additional support for Plaintiff's long-term complaints of severe body aches and fatigue. Arguing that the ALJ rejected Plaintiff's symptom testimony partially due to what the ALJ perceived as a lack of objective evidence, Plaintiff contends these reports "are critical to understanding the basis for Plaintiff's ongoing symptoms and their attendant limitations." (AR 20, 18:6-7). Plaintiff asks the court to consider the evidence as a further demonstration that the ALJ decision is not based on substantial evidence.

---

[2] Plaintiff notes in her Motion for Summary Judgment that the additional evidence submitted to the Appeals Council was not originally made part of the Administrative Record. *See* (dkt. 20) at 18. Upon being informed of this error, the Commissioner supplemented the record with the missing documents on May 14, 2018. *See* (dkts. 23, 24.) The court thus has the entire record before it.

The relevant regulation, 20 C.F.R. § 404.970(a)(5), specifies that the Appeals Council will consider evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." When the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence. *Brewes v. Commissioner of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

Here, the date of the hearing decision was March 11, 2016. Of the four items of evidence relied on by Plaintiff only one, the evidence dated January 28, 2016, concerning the possible diagnosis of lupus erythematosus, "relates to the period on or before the date of the hearing decision." *See* 20 C.F.R. 404.970(a)(5). However, the possible lupus diagnosis would have added nothing to the ALJ's analysis, because the ALJ had already recognized Plaintiff's lupus as a severe impairment. (AR 22).

Plaintiff offers only one reason why these four items of evidence would have influenced the ALJ's decision: that they "provide additional support for Plaintiff's long-term complaints of severe body aches and fatigue." (AR 20, 18:4-5). The three reports dated after the date of the hearing decision do not negate the ALJ's unfavorable finding. It is unclear how, without pure speculation on the part of the court, these diagnoses are relevant to the preceding time period. Further, Plaintiff points to nothing in the reports which addresses her claimed disabilities, either physical or mental. The court thus finds nothing in the additional evidence which establishes that the ALJ's decision was not based on substantial evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (a court reviewing the Commissioner's decision must consider the record as a whole).

//

# CONCLUSION

Based on the foregoing, the court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: February 1, 2019

_____
ROBERT M. ILLMAN
United States Magistrate Judge